David Edward **HIGBIE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–86–00188–CR.

Court of Appeals of Texas, Dallas.

Jan. 13, 1987.

Tex McConathy, Dallas, for appellant.

Wm. Randell Johnson, Asst. Dist. Atty., Dallas, for appellee.

Before STEPHENS, DEVANY and HOWELL, JJ.

DEVANY, Justice.

On the court's own motion, our opinion dated December 10, 1986, is withdrawn and the following is now our opinion.

David Edward Higbie appeals his conviction for driving while intoxicated. He waived trial by jury and entered a plea of nolo contendere. The court found appellant guilty of driving while intoxicated and assessed punishment at 60 days in jail, probated for 24 months, together with a fine of $350. In his sole point of error, he contends that the trial court erred when it denied his motion to suppress the evidence, since the evidence was obtained by an unlawful roadblock in violation of the Fourth Amendment. We agree and, accordingly, reverse.

The evidence at the suppression hearing was based solely on the testimony of the arresting officer. The officer testified that on the day in question, he was assigned to conduct a roadblock for the purpose of checking driver's licenses at the 5800 block of Beltline Road. The officer testified that the roadblock was located about one-half to three-quarters of a mile from several bars. The roadblock only stopped eastbound traffic which was traveling away from the bars toward a residential area. The roadblock did not stop traffic coming from the residential area toward the bars. The roadblock began between 1:30 a.m. and 1:45 a.m., which was about the time the bars closed. The officers assigned to the roadblock were all members of the Driving While Intoxicated Squad of the Traffic Division of the Dallas Police Department. The officer testified that the sole purpose of the roadblock was to check for valid driver's licenses. A sign was posted 50 to 100 feet before the stop, informing drivers of the roadblock and instructing them to have their driver's licenses ready. He also testified that all traffic was stopped and that he had no discretion in choosing whom to stop. He did testify, however, that the location and time of the roadblock was left solely to his supervisor's discretion. The officer testified that appellant was stopped

at the check point and asked to produce his license. The appellant appeared to be intoxicated and was arrested for driving while intoxicated.

When the police stop an automobile and detain its occupants, they are conducting a "seizure" within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse,* 440 U.S. 648, 655, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660 (1979); *United States v. Martinez-Fuerte,* 428 U.S. 543, 556–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1976); *Webb v. State,* 695 S.W.2d 676, 677 (Tex.App.—Dallas 1985, pet. granted). Although it is settled law that peace officers have the unquestioned right to stop a person driving an automobile for the purpose of examining his or her driver's license, this detention is not lawful when the examination of the driver's license is a subterfuge, or an excuse for failure to obtain a search warrant. *Webb v. State,* 695 S.W.2d at 677; TEX.REV. CIV.STAT.ANN. art. 6687b, § 13 (Vernon Supp.1987).

First, then, we must determine whether appellant was actually stopped for a routine driver's license check. If so, the stop would be authorized under article 6687b, § 13, the statute which permits such routine checks. However, if the check was actually a subterfuge for catching drunk drivers, then the stop would not be authorized unless it passed certain criteria for constitutionality. *Webb,* 695 S.W.2d at 677–83. Thus, the question becomes whether this roadblock was a valid driver's license checkpoint or a subterfuge for catching drunk drivers. The problem appears to be with determining the real intent of the stop. There is an important distinction between this case and *Webb,* where the intent of the officers was easily detected since one officer testified that the roadblock was set up to be a DWI check. 695 S.W.2d at 678. In this case, however, the arresting officer testified that the sole purpose of the roadblock was to check for valid driver's licenses. However, the intent or purpose of the stop must be measured by *all the circumstances* surrounding the

stop. If all traffic traveling in both directions is stopped in broad daylight on a street heavily traversed by a wide variety of citizens, we would have little problem determining the intent of the stop. On the other hand, if the roadblock occurs in the middle of the night and stops all traffic traveling away from the bars on a street where bars are closing, the intent is not as clear. The check began at 1:45 a.m., about the time when the bars were closing. It was just down the street from a number of bars. The check only stopped traffic traveling away from the bars and toward a residential area; it did not stop traffic coming from the residential area toward the bars. All the officers on the check were members of the Driving While Intoxicated Squad. Given all these circumstances, it becomes apparent that the roadblock was there for the specific purpose of catching drunk drivers. The arresting officer's testimony that the stop was solely for the purpose of checking driver's licenses is not sufficiently persuasive to contradict the apparent intent of the stop as demonstrated by the circumstances. Therefore, we hold that the seizure of appellant was not pursuant to a routine driver's license check as authorized under article 6687b, § 13.

Having held that the roadblock was not a routine license check as authorized under article 6687b § 13, but instead was unquestionably a driving while intoxicated check, we must now examine it in light of the general law concerning warrantless searches and seizures. In *Webb v. State,* 695 S.W.2d 676, we first addressed the constitutionality of a DWI roadblock. In that case, we determined a number of criteria to examine as to whether a DWI check is constitutional. "As with all warrantless searches and seizures, the constitutionality of DWI roadblocks is determined by balancing the legitimate governmental interest against the degree of intrusion on the individual's Fourth Amendment rights." *Webb v. State,* 695 S.W.2d at 678, *citing Delaware v. Prouse,* 440 U.S. at 655, 99 S.Ct. at 1397; *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574,

2578, 45 L.Ed.2d 607 (1975); *United States v. Ortiz*, 422 U.S. 891, 895, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). This balancing test for the constitutionality of a driving while intoxicated roadblock involves three considerations: first, whether the public interest in a driving while intoxicated roadblock outweighs the individual's right to privacy; second, the degree to which the roadblock, as opposed to a less intrusive method, advances the public interest; and third, whether the valid public interest is sufficient to justify the particular intrusion committed. *Webb*, 695 S.W.2d at 678, 681–83, *citing Brown v. Texas*, 443 U.S. 47, 49, 99 S.Ct. 2637, 2639, 61 L.Ed.2d 357 (1979).

■ First we consider whether the public interest in such a driving while intoxicated roadblock outweighs the individual's right to privacy. We consider this in the light of the basic rule that all "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Webb*, 695 S.W.2d at 681, *citing Coolidge v. New Hampshire*, 403 U.S. 443, 444, 91 S.Ct. 2022, 2026, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Therefore, when a seizure is conducted without a warrant, as in the present case, the burden is on the State to show facts which will authorize the seizure of the evidence challenged. *Webb*, 695 S.W.2d at 681. No such evidence is shown in this case. We have no evidence showing that Beltline Road is particularly plagued by drunk drivers, nor do we have evidence that the roadblock in question is a more effective means of dealing with drunk drivers than the traditional roving patrols that act upon reasonable suspicion. *Webb*, 695 S.W.2d at 681. As the court stated in *Webb*, "[a]lthough it is beyond dispute that drunk drivers pose a serious threat and are a grave menace to the public and that strong measures are needed to cope with the problem, the State failed to show facts authorizing the warrantless seizure in this case." 695 S.W.2d at 681.

The second factor in our analysis is the degree to which the seizure advances the public interest. The State has failed to show that the roadblock was more effective than available, less intrusive alternative means of deterrence. "Nothing in the record indicates that the only practical or effective means of apprehending drunk drivers is by arbitrarily subjecting all citizens to police scrutiny without suspicion of wrongdoing simply because they happen to be traveling on a particular road at a certain time." *Webb*, 695 S.W.2d at 682.

■ The third factor in our analysis is whether the valid public interest served is sufficient to justify the particular intrusion effected. In applying this test, we must examine (1) the type of checkpoint used, (2) the purpose of the checkpoint, and (3) the degree of intrusion and fright imposed upon the persons passing through the roadblock. *Webb*, 695 S.W.2d at 682.

First, the checkpoint in this case was a temporary one. It was located on Beltline Road for one night—actually for just a few hours—and then moved. It was not regularly established on a daily, weekly or even monthly basis. As the officer testified in this case, the roadblocks were just set up from time to time, under his supervisor's discretion. This was "a one-night affair." *Webb*, 695 S.W.2d at 682. This was not a permanent roadblock with a limited purpose such as the one approved in *Martinez-Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3074.

Second, the purpose of the checkpoint is not clearly established. The evidence showed that while the police claimed the roadblock was for the purpose of checking driver's licenses, circumstances show that it was actually used as a "dragnet" for drunk drivers leaving the bars on Beltline Road.

Third, we must consider the degree of intrusion and fear that an average person would be subjected to when passing through the checkpoint. It is our opinion that a stop at a police roadblock in the

middle of the night is not an expected event. It is both alarming and, to a degree, dangerous. The average person would be driving cautiously with his or her doors locked, hoping to get home safely. We are of the opinion that such an unexpected stop as the roadblock in this case violates the driver's reasonable expectation of privacy. One who drives in the middle of the night has the right to such an expectation of privacy just as much, if not more so, than one who drives in broad daylight. The roadblock in this case intruded upon every person who drove on Beltline Road that night, whether they were persons coming home from a bar, working the late shift, or just out visiting friends. Therefore, the roadblock is an unlawful seizure because it was operated with the ulterior motive of apprehending persons who were driving while intoxicated without the need for obtaining a search warrant.

We hold that appellant had a reasonable expectation of privacy at the time and place of the stop. If the police had had extrinsic evidence that appellant was driving while intoxicated, such as his driving in an unsafe manner, then they would have had probable cause to stop him. Moreover, if the State had acknowledged the true purpose of the roadblock and had presented evidence that the timing and location of this roadblock were not arbitrary, but had been carefully selected because of an unusually high proportion of drunken drivers observed at the location at similar hours on previous occasions, and that such a roadblock was more effective than other means to protect the public, then a different question would be raised concerning the reasonableness of this limited intrusion on the privacy of the drivers within the principle of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). No such evidence was present here. The warrantless seizure and search of appellant was in violation of the Fourth Amendment. Accordingly, the evidence of appellant's intoxication must be suppressed as the fruit of an illegal stop. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).

While the record in this case would indicate that we should order an acquittal, the proper remedy is to reverse the conviction and remand the cause for a new trial since we have held that the admission of the unlawfully seized evidence was trial error. *Adams v. State*, 639 S.W.2d 942, 943 (Tex. Crim.App.1982).

The judgment of the trial court is reversed and we remand for a new trial.