**Michael Ray KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00461–CR.**

Court of Appeals of Texas, Dallas.

July 1, 1987.

Rehearing Denied Aug. 3, 1987.

Mike McCollum, J. Thomas Sullivan, Michael A. Moss, R. Mathew Tafel, Dallas, for appellant.

Michael A. Klein, Dallas, for appellee.

Before STEPHENS, HECHT and McCRAW, JJ.

STEPHENS, Justice.

Michael Ray King appeals his conviction for driving while intoxicated. The jury assessed punishment at thirty days' confinement, probated for two years, a fine of five hundred dollars, and suspension of King's driver's license for one year. Although appellant asserts nine points of error on appeal, we find his first point of error dispositive. In his first point of error, appellant argues that the trial court erred in overruling his motion to suppress evidence

that was obtained in violation of the Fourth Amendment of the United States Constitution based on seizure pursuant to an illegal traffic roadblock. We agree with King's first point of error. Consequently, we reverse and remand for a new trial.

The record in this case regarding the date the suppression hearing was conducted is very confusing. However, we assume, as indicated by the trial court in a letter directed to this Court at this Court's request, that the proceedings outside the presence of the jury from pages 63 to 151 of the statement of facts constitute the only hearing on the motion to suppress.

The evidence at the suppression hearing consisted of the testimony of: Sargent Gibbons, the arresting officer; Sargent Benningfield, who had no personal knowledge of the events that occurred at the roadblock but appeared at trial under a subpoena duces tecum issued by King; and John Thomas Maguire, a police officer present at the roadblock in question. The relevant testimony of each officer is summarized below.

### Sargent Gibbons

Sargent Gibbons testified that on April 12, 1985, he was assigned to conduct a roadblock at the 1800 block of Storey Lane for the purpose of checking drivers' licenses. The roadblock was conducted near an area highly concentrated with restaurants and bars. The roadblock stopped traffic traveling westward only, away from the bars and restaurants. Eastbound traffic, traveling toward the bars and restaurants, was not stopped. The roadblock began at approximately 1:30 a.m. and lasted a little over an hour. Most of the bars in the area closed at 2:00 a.m. Sargent Gibbons was a member of the DWI Selective Enforcement Unit of the Traffic Division of the Dallas Police Department. Sargent Gibbons had no discretion in choosing whom to stop; all westbound traffic was stopped. The location and time of the roadblock were left solely to Sargent Gibbons' supervisor's discretion. Appellant was stopped at the check point and asked to produce his license. When King rolled down his car

window at the checkpoint, Sargent Gibbons noticed a "strong odor of an alcoholic beverage" on King's breath. Sargent Gibbons asked King to step out of his car. Another officer escorted King across the street where a third officer gave King a "field sobriety test." Appellant was then arrested for driving while intoxicated.

### Sargent Benningfield

Sargent Benningfield testified that he was responding to King's subpoena duces tecum on behalf on Chief Prince, and that he had in his possession several officers' activity reports from the roadblock in question. Sargent Benningfield was not present at the roadblock and had no personal knowledge concerning the roadblock or King's arrest. The roadblock in question was conducted under Sargent John T. McGuire's supervision. Typically, driver's license checks are conducted at or near "target sites." Target sites are areas which, based on data accrued in the two previous years, have a high probability of DWI violations, other violations, fatalities, and serious injuries. The primary purpose of all driver's license roadblocks conducted is to check whether the driver of the automobile possesses a valid operator's license. The officers present at a driver's license roadblock are authorized to take appropriate enforcement action should they come across any other violations such as DWI, drug violations, weapons, or no insurance. The officers participating in a driver's license roadblock are told to look for any "enforceable violations of the law." The typical driver's license check includes the presence of several officers standing by to administer field sobriety tests in the event one of the drivers stopped for a license check is suspected of driving while intoxicated.

### Sargent McGuire

Sargent McGuire testified that he supervised the driver's license roadblock conducted on April 12, 1985, at 1:30 a.m. at the 1800 block of Storey Lane. All the officers present at the roadblock in question were members of the DWI Selective Enforcement Unit. Flare lines were set up approximately fifty feet prior to the stop point. A sign bearing the words "driver's license check" was placed on the road prior to the flare lines, to advise motorists of the nature of the upcoming stop. The officers present at the roadblock in question were instructed to take action on any violation of the law they observed during the stop, and the officers had wide discretion in this area. The primary purpose for the roadblock in question was to check driver's licenses.

We will first address the constitutionality of the roadblock in the case at bar. There are two alternative rationales for holding this roadblock unconstitutional; by following the rationale set forth in *Higbie v. State*, 723 S.W.2d 802 (Tex.App.—Dallas 1987, pet. filed) and by following the rationale set forth in *Padgett v. State*, 723 S.W.2d 780 (Tex.App.—Dallas 1987, pet. filed). First, as this Court recently wrote in *Higbie:*

> [T]he arresting officer testified that the sole purpose of the roadblock was to check for valid driver's licenses. However, the intent or purpose of the stop must be measured by *all the circumstances* surrounding the stop. If all traffic traveling in both directions is stopped in broad daylight on a street heavily traversed by a wide variety of citizens, we would have little problem determining the intent of the stop. On the other hand, if the roadblock occurs in the middle of the night and stops all traffic traveling away from the bars on a street where bars are closing the intent is not as clear.... The check began at 1:45 a.m., about the time when the bars were closing. It was just down the street from a number of bars. The check only stopped traffic traveling away from the bars and toward a residential area; it did not stop traffic coming from the residential area toward the bars. All the officers on the check were members of the Driving While Intoxicated Squad. Given all these circumstances, it becomes apparent that the roadblock was there for the specific purpose of catching drunk drivers. The arresting officer's

testimony that the stop was solely for the purpose of checking driver's licenses is not sufficiently persuasive to contradict the apparent intent of the stop as demonstrated by the circumstances. Therefore, we hold that the seizure of appellant was not pursuant to a routine driver's license check as authorized under article 6687b, § 13.

*Higbie,* 723 S.W.2d at 804 (emphasis in original). The circumstances described in *Higbie,* are nearly identical with the circumstances surrounding the stop in the present case. Hence, we conclude that the officers' testimony that the stop in the case at bar was solely for the purpose of checking drivers' licenses is not sufficiently persuasive to contradict the apparent intent of the stop as demonstrated by the circumstances.

■ In *Higbie,* after determining that the roadblock in question was in fact a subterfuge to catch drunk drivers, we applied the balancing test set forth in *Webb v. State,* 695 S.W.2d 676 (Tex.App.—Dallas 1985, pet. granted) to determine if the roadblock nonetheless met the constitutional criteria as required by *Webb.* In *Higbie* we stated:

> Having held that the roadblock was not a routine license check as authorized under article 6687b § 13, but instead was unquestionably a driving while intoxicated check, we must now examine it in light of the general law concerning warrantless searches and seizures. In *Webb v. State,* 695 S.W.2d 676, we first addressed the constitutionality of a DWI roadblock. In that case, we determined a number of criteria to examine as to whether a DWI check is constitutional. "As with all warrantless searches and seizures, the constitutionality of DWI roadblocks is determined by balancing the legitimate governmental interest against the degree of intrusion on the individual's Fourth Amendment rights." *Webb v. State,* 695 S.W.2d at 678, *citing Delaware v. Prouse,* 440 U.S. 648, 655, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660; *United States v. Brignoni-Pounce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *United States v. Or-*

*tiz,* 422 U.S. 891, 895, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). This balancing test for the constitutionality of a driving while intoxicated roadblock involves three considerations: first, whether the public interest in a driving while intoxicated roadblock outweighs the individual's right to privacy; second, the degree to which the roadblock, as opposed to a less intrusive method, advances the public interest; and third, whether the valid public interest is sufficient to justify the particular intrusion committed. *Webb,* 695 S.W.2d at 678, 681–83, *citing Brown v. Texas,* 443 U.S. 47, 49, 99 S.Ct. 2637, 2639, 61 L.Ed.2d 357 (1979).

*Higbie,* 723 S.W.2d at 804–05. In *Higbie,* we balanced each of the considerations set forth above, and concluded that the *Higbie* roadblock was unconstitutional. Having previously determined in *Higbie* that a roadblock substantially identical to the roadblock in the present case was unconstitutional under the balancing test set forth in *Webb,* we likewise hold, for the reasons set forth in *Higbie,* that the roadblock in the case at bar is unconstitutional under the *Webb* balancing test. *See Higbie,* 723 S.W.2d at 805–06.

■ Second, the roadblock in the case at bar was not authorized under Texas Revised Civil Statutes Annotated article 6687b, § 13 (Vernon Supp.1987). Recently, in *Padgett v. State,* 723 S.W.2d 780 (Tex. App.—Dallas 1987, pet. filed), this Court held a May 17, 1985, 2:00 a.m. roadblock at the 1800 block of Storey Lane invalid because the roadblock was not conducted for the *sole* purpose of checking driver's licenses and therefore, was not authorized by article 6687b, § 13, of the Texas Revised Civil Statutes. In *Padgett,* we stated:

> Article 6687b, § 13, of the Texas Revised Civil Statutes authorizes any peace officer to "stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license." TEX.REV.CIV.STAT. ANN. art. 6687b, § 13 (Vernon Supp. 1986). The courts of this state have consistently held that a driver's license check must be the *sole* purpose for such,

a stop, to-wit: to determine whether the driver had a valid driver's license. *Meeks v. State,* 692 S.W.2d 504, 508 (Tex. Crim.App.1985), and cases cited therein. "If a license check is not the sole reason for a detention, that detention is not authorized by the statute and cannot be upheld." *Meeks,* 692 S.W.2d at 508, citing *Fatemi v. State,* 558 S.W.2d 463 (Tex.Crim.App.1977).

*Padgett,* 723 S.W.2d at 781. Sargent McGuire in the case at bar, like the officers in *Padgett,* testified at the suppression hearing that although the stop was made to check for a valid driver's license there were other additional reasons for the stop. Sargent McGuire testified as follows in response to this question:

Q. Okay. And you weren't there to enforce just invalid driver's license, but all the laws; correct?

A. It was a driver's license check; anything that comes to light other than that, we can take action.

Q. Let me ask you this: So you were checking for driver's licenses; correct?

A. Yes, Sir.

Q. Making proper equipment—maintaining proper equipment on a vehicle?

A. You can look at that, also.

Q. Okay; overweight vehicles?

A. You could look at that.

Clearly, a driver's license check was not the *sole* purpose for the roadblock in the present case.

■ Neither can the stop be upheld as an investigative stop. In order to make a valid investigative stop for less than probable cause, a police officer must have "specific and articulable facts which, in the light of his experience and personal knowledge taken together with rational inferences from those facts, would reasonably warrant the intrusion of the freedom of a citizen." *McMillan v. State,* 609 S.W.2d 784, 786 (Tex.Crim.App.1981). Sargent Gibbons, the arresting officer, expressly stated in the suppression hearing that he did not have any reason to stop King other than as part of the roadblock. Sargent Gibbons gave the following testimony in response to these questions by defense counsel:

Q. So, the roadblock was set up about thirty minutes before the bars were closing and ended about thirty minutes after; is that correct?

A. Well, the license check was set up thirty minutes before and thirty minutes after.

Q. Did you have a warrant for Michael King's arrest?

A. No, ma'am.

Q. Did you see him involved in any kind of moving violation?

A. No, ma'am.

Q. Didn't see him weaving or using an improper turn signal?

A. No, ma'am.

Q. And you had no warrant for his arrest.

A. Correct.

Q. Did you have any probable cause for his arrest?

A. Well, I think that when I thought he was possibly intoxicated, he was operating a motor vehicle.

Q. And before you got him out of the car, you didn't see him violate any law?

A. No, ma'am.

Therefore, the stop cannot be upheld as a valid investigative stop since Sargent Gibbons did not have the "specific, articulable facts" necessary to "warrant the intrusion of the freedom of a citizen."

Furthermore, although Sargent Benningfield testified regarding "target sites" and the fact that the roadblocks were set up to service the target sites, this testimony does not constitute "specific articulable facts ... which would reasonably warrant the intrusion of the freedom of a citizen." *See Padgett,* 723 S.W.2d at 782.

Therefore, in summary, the roadblock was not authorized by article 6687b, § 13, because it was not *solely* for the purpose of conducting driver's license checks. Alternatively, the roadblock, in light of the surrounding circumstances, was a subterfuge to catch drunk drivers which was unconstitutional because it failed to pass the balancing test set forth in *Webb.* Hence, King's first point of error is sustained. The evidence stemming from the

seizure of King at the invalid roadblock should have been suppressed by the trial court.

While the record in this case indicates that we should order an acquittal, the proper remedy is to reverse the conviction and remand the cause for a new trial since we have held that the admission of the unlawfully seized evidence was trial error. *Adams v. State*, 639 S.W.2d 942, 943 (Tex. Crim.App.1982) (en banc).

The judgment of the trial court is reversed and remanded for a new trial.

McCRAW, Justice, concurring.

I concur with the majority's disposition of the present case because the trial court committed reversible error by failing to instruct the jury as required under Texas Code of Criminal Procedure article 38.23. I would not reach the issue of the constitutionality of the roadblock. Constitutional issues should not reached unless it is absolutely necessary and the matter cannot be resolved on another basis. *See Smith v. State*, 658 S.W.2d 172, 174 (Tex.Crim.App. 1983); *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex.Crim.App.1981). King properly submitted and requested an instruction which traced the language of the statute:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PRO.ANN. art. 38.23 (Vernon 1979).

When the issue of unlawful arrest is raised by a motion to suppress, the State has the burden of showing that there was probable cause for the warrantless arrest. *Roberts v. State*, 545 S.W.2d 157, 158 (Tex. Crim.App.1977). Further, when the evidence raises a fact issue concerning probable cause, the defendant is entitled to have the jury instructed in accordance with article 38.23. *Washington v. State*, 663 S.W.2d 506, 508 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). I would hold that a fact issue concerning probable cause was raised on whether the questioned roadblock was a driver's license check that is statutorily authorized under Texas Revised Civil Statutes article 6687b, § 13, or an unauthorized D.W.I. check.

King's third point of error alleges that the jury should have been instructed on the legality of his seizure, and his motion to suppress states that the arrest was illegal. The motion continues by stating:

If the State contends that the arrest was conducted within a lawful roadblock, *Defendant alleges that the arrest was without probable cause* in violation of the 4th, 5th, 6th and 14th Amendments to the Constitution of the United States of America and also in the matter repugnant to Article 1, Section 9, 10, 19 and 29 of the Constitution of the State of Texas and Article 15 of the Texas Code of Criminal Procedure.

(Emphasis added.)

The issue of probable cause was placed in dispute by the motion to suppress. *See Roberts*, 545 S.W.2d at 158. In order to determine if there is conflicting evidence on the issue, this court must review the testimony concerning the purpose of the roadblock as presented to the jury, disregarding any evidence presented outside the jury's presence in the suppression hearing. *See Skatell v. State*, 688 S.W.2d 248, 250 (Tex. App.—Fort Worth 1985, no pet). Our review discloses that the following facts were presented to the jury by testimony of the officers present at the scene of the roadblock: (1) Arresting Officer Gibbons and Officer Ellzey were members of the DWI Selective Enforcement Unit (DWI Unit) at the time of King's arrest; (2) all the officers who initially set up the roadblock were part of the DWI Unit; (3) part of the focus of the DWI Unit was to apprehend intoxicated drivers; (4) officers in the DWI Unit

were specially trained for the job; (5) "target areas" were set out for DWI enforcement and one of those areas was Harry Hines and Northwest Highway—the roadblock was located one-quarter to one-half mile from that target area; (6) Officer Gibbons stated, "There was a large amount of people who were driving while intoxicated in [the target] areas;" (7) there was a large concentration of bars and restaurants serving alcoholic beverages in the target areas; (8) the roadblock was conducted only on the westbound lane of a divided highway; (9) the roadblock commenced at 1:30 a.m. and ended at 2:30 a.m., while the bars and restaurants closed at 2:00 a.m.; and (10) ten of the twelve officers present at the roadblock on the evening in question were certified to operate the intoxilyzer machine used by the Dallas Police Department. I would hold that this evidence raises a question concerning the factual issue of the nature of the roadblock and the probable cause for the initial stop of King. The trial court erred by not submitting the requested instruction. *See Stone v. Stone,* 703 S.W.2d 652, 655 (Tex.Crim.App.1986). I would sustain King's third point of error, reverse the judgment of the trial court and remand for new trial.