**Michael Ray KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00461–CR.**

Court of Appeals of Texas,
Dallas.

June 27, 1991.

Discretionary Review Refused
Oct. 16, 1991.

---

1. The Wards and all other defendants except the O'Connors had settled prior to trial.

J. Thomas Sullivan, Little Rock, Ark., Mike McCollum, Dallas, for appellant.

Michael A. Klein, Pamela Sullivan Berdanier, Dallas, for appellee.

Before KINKEADE,[1] BURNETT[2] and WHITTINGTON[3], JJ.

## OPINION ON REMAND

BURNETT, Justice.

Michael Ray King appeals his conviction for driving while intoxicated (DWI). After a jury trial, the court assessed punishment at thirty days' confinement, probated for two years, a $500 fine, and suspension of King's driver's license for one year. On original submission, King presented nine points of error. In his first point of error, King argued that the trial court erred when it overruled his motion to suppress evidence seized pursuant to an illegal traffic roadblock in violation of the fourth amendment of the United States Constitution. This Court sustained King's first point of error, reversed the trial court's judgment, and remanded the case for a new trial.

Recently, in light of *Michigan v. Sitz*, —— U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the Court of Criminal Appeals on petition for discretionary review held that *Sitz* overruled its prior decision in *Higbie v. State*, 780 S.W.2d 228 (Tex.Crim. App.1989), and its precursor, this Court's decision in *Higbie v. State*, 723 S.W.2d 802 (Tex.App.—Dallas 1987). *King v. State*, 800 S.W.2d 528, 529 (Tex.Crim.App.1990). *Higbie* held that DWI roadblocks, whatever their expressed purpose, are seizures under the fourth amendment and are violative of that amendment's protections against unreasonable searches and seizures. *Higbie*, 780 S.W.2d at 231–39; 723 S.W.2d at 804–

---

1. The Honorable Ed Kinkeade succeeded the Honorable John L. McCraw, a member of the original panel, upon Justice McCraw's resignation effective December 18, 1986. Justice Kinkeade has reviewed the briefs and the record before the court.

2. The Honorable Joe Burnett succeeded the Honorable Bill J. Stephens, a member of the original panel, at the expiration of his term.

Justice Burnett has reviewed the briefs and the record before the Court.

3. The Honorable John Whittington succeeded the Honorable Nathan Hecht, a member of the original panel, at the expiration of his term. Justice Whittington has reviewed the briefs and the record before the Court.

05. Since we relied on *Higbie* in our original opinion, the Court of Criminal Appeals orders that we reconsider King's "first point of error in accordance with *Michigan v. Sitz*" and also reconsider King's "remaining points of error, including his claim under [article] I, [section] 9 of the Texas Constitution." *King*, 800 S.W.2d at 529. We sustain King's first and second points of error. We reverse and remand for a new trial.

## FACTS

The evidence at the suppression hearing consisted of testimony from three Dallas police officers—Sergeant Gibbons, the arresting officer; Sergeant Benningfield, the senior supervisor of the Dallas Police Department's DWI Selective Enforcement Unit; and Sergeant Maguire, the supervisor in charge of the roadblock in question.

### Sergeant Gibbons

Sergeant Gibbons, a member of the DWI Selective Enforcement Unit, testified that on April 12, 1985, Sergeant Maguire assigned him to conduct a roadblock at the 1800 Block of Storey Lane, an area highly concentrated with restaurants and bars, for the purpose of checking driver's licenses. Sergeant Maguire chose this site. Sergeant Gibbons had no discretion in choosing whom to stop. The roadblock stopped all the traffic traveling west, away from the bars and restaurants. It did not stop the traffic traveling toward the bars and restaurants. The roadblock began at approximately 1:30 a.m. and lasted a little over an hour. Most of the bars in the area closed at 2:00 a.m. Sergeant Gibbons issued no citations for invalid driver's licenses that night.

Prior to stopping King, Sergeant Gibbons did not see him involved in any kind of moving violation. After stopping King, Sergeant Gibbons asked him, as he did every driver who went through the roadblock, to produce a valid driver's license. When King rolled down his car window, Sergeant Gibbons noticed a strong odor of alcohol on King's breath; he also noted that King had red, glassy, watery, glazed, blood-shot eyes; slightly slurred speech; and difficulty removing his driver's license from his wallet. Believing that King might be intoxicated, Sergeant Gibbons asked him to step out of his car. Another officer then escorted King across the street, where a third officer gave King a field sobriety test, after which the police arrested King for DWI.

### Sergeant Benningfield

Sergeant Benningfield was not present at the roadblock and did not have any personal knowledge about the roadblock or King's arrest. He had in his possession several officers' activity reports from the roadblock in question. These reports showed that three DWI arrests resulted from the roadblock. He stated that the primary duty of the officers involved in the DWI Selective Enforcement Unit was DWI enforcement.

Usually the police conduct driver's license checks at or near "target sites," which consist of areas that, based on data accrued in the two previous years, have a high probability of DWI violations, other violations, fatalities, and serious injuries. The data did not include a study of invalid driver's licenses for the areas. The driver's license roadblock's primary purpose is to check whether the driver of the automobile possesses a valid operator's license. The officers are also told to look for any "enforceable violations of the law" and are authorized to take appropriate enforcement action should they come across any other violations such as DWI, drug violations, weapons, or no insurance. The typical driver's license check includes the presence of several officers standing by to administer field sobriety tests in the event that an officer suspects one of the drivers stopped for a license check of DWI. The guidelines for the roadblocks provide that there not be a back-up farther than 300 feet or about twenty cars and an attempt made not to detain anyone longer than fifteen seconds. The officers also must place signs about 300 feet back from the checkpoint and mark the location with flares.

*Sergeant Maguire*

Sergeant Maguire supervised the roadblock in question. All the officers present at the roadblock were members of the DWI Selective Enforcement Unit. He stated that the primary purpose of this roadblock was to check for drivers' licenses. The general public was given no advance notice of the time or location of this roadblock. At this roadblock, the officers set up flare lines along westbound Storey Lane approximately fifty feet prior to the checkpoint. The officers placed a sign bearing the words "driver's license check" on the road prior to the flare lines, to advise motorists of the nature of the upcoming stop. The officers also put police vehicles on each shoulder of the road with their lights flashing to capture the motorists' attention. The officers at the roadblock were instructed to inform each motorist that the roadblock was a driver's license check and then ask to see his driver's license. They were also instructed to take action on any violation of law they observed during the stop, and the officers had wide discretion in this area. Approximately 200 to 300 cars were stopped at the roadblock. Officer Maguire had no statistics concerning the extent of the problem of drunk drivers at Storey Lane and could not make the judgment whether roadblocks were any more effective in dealing with the problem of DWI than were roving patrol cars.

## CONSTITUTIONALITY OF THE ROADBLOCK

In his first and second points of error, King contends that the trial court erred when it overruled his motion to suppress evidence seized at the roadblock in question. He argues that the roadblock violates his rights under the fourth amendment of the United States Constitution and article I, section 9 of the Texas Constitution.

*Legality of Roadblock Under the United States Constitution*

■ When police stopped and detained King, they seized him within the meaning of the fourth amendment. *Delaware v. Prouse*, 440 U.S. 648, 655, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979). In Texas, article 6687b, section 13 of the Texas Revised Civil Statutes gives peace officers the right to stop and detain a motorist for the limited purpose of checking his driver's or operator's licenses. *Webb v. State*, 739 S.W.2d 802, 812 (Tex.Crim.App.1987). However, this statute does not grant the police carte blanche authority for "fishing expeditions" or allow them to use a driver's license roadblock as a subterfuge to cover up unlawful activity. *Id.* The mere request for a driver's license does not validate the stopping of an automobile under the authority of this statute if it is not clear that the driver's license check was the reason for the detention. *Id.* If we determine that the roadblock was actually a subterfuge for catching drunk drivers, we must then decide whether this DWI roadblock was constitutional in light of the Supreme Court's decision in *Sitz*.

■ First, we must determine whether the police actually stopped King for a driver's license check or whether the police used the roadblock as a subterfuge to catch drunk drivers.[4] This question turns on the police officers' intent. We should not limit our investigation to the stated purpose testified to by the two officers present at the roadblock—driver's license check—rather we should consider all of the surrounding circumstances. *See Webb*, 739 S.W.2d at 804.

If police stop all traffic traveling in both directions in broad daylight along a street used by a variety of citizens, we would have little trouble determining their intent. However, when police conduct a roadblock at a "target site," a site specifically chosen because of its high probability of DWI violations, in the middle of the night, only stopping traffic traveling away from bars along a street where bars are closing, their intent is not as clear. The roadblock at

---

**4.** In light of the Court of Criminal Appeals recent decision in *State v. Wagner*, 810 S.W.2d 207 (Tex.Crim.App.1991), we conclude it is once again necessary for us to first address whether the police used the roadblock in question as a subterfuge to catch drunk drivers.

issue began at 1:30 a.m., just as the bars and restaurants in the area were closing. The police only stopped traffic traveling westbound, away from those bars and restaurants. All of the officers involved were members of the DWI Selective Enforcement Unit, a unit whose primary duty is DWI enforcement. Given these surrounding circumstances, Sergeant Gibbons's and Maguire's testimony that the roadblock was for the purpose of checking driver's licenses is unpersuasive. It becomes apparent from all the circumstances that the police officer's intent in setting up the roadblock was to catch drunk drivers. Therefore, we conclude that the police did not seize King pursuant to a routine driver's license check as authorized by article 6687b, section 13.

 We now must determine whether this roadblock was constitutional in light of the Supreme Court's decision in *Sitz*. In *Sitz*, the Michigan legislature empowered its counterpart to our Department of Public Safety to set up a statewide administrative scheme for sobriety checkpoints. Pursuant to that scheme, the director of the state police department appointed a Sobriety Checkpoint Advisory Committee, which created guidelines setting forth procedures governing checkpoint operations, site selection, and publicity. The Supreme Court upheld the constitutionality of the sobriety checkpoint set up according to these procedures.

In this case, the State introduced no evidence that Texas has such an administratively developed scheme. The development of such a scheme is best left to the legislature. *See State v. Wagner*, 810 S.W.2d 207, 208 (Tex.Crim.App.1991) (Miller, J. concurring, joined by five other judges). Here, the State introduced the DWI Enforcement Squad Procedure Manual, which included an appendix entitled "Traffic Enforcement Road Checks." The manual stated the purpose of the roadblocks and outlined the procedures for setting them up. The procedures did not specify the length of time the driver would be stopped, the questions the driver would be asked, or whether cars would be stopped in both

directions or just one. Further, the procedures made no provisions for publicity and provided only general guidelines for site selection. Sergeant Benningfield testified as to what the typical driver's license check included and that they were usually set up at or near "target sites." He also stated that the guidelines for these roadblocks provided that there not be a back-up farther than 300 feet or twenty cars and an attempt made not to detain anyone longer than fifteen seconds. The State introduced no written evidence of the guidelines testified to by Sergeant Benningfield. Sergeant Maguire testified as to the instructions he gave to the officers at the roadblock and that he set up the roadblock pursuant to the DWI Enforcement Squad Procedure Manual. The State introduced no evidence as to who developed either the DWI Enforcement Squad Procedure Manual or the guidelines testified to by Officer Benningfield or any evidence of how either of these were developed. From these facts, we cannot conclude that a legislatively developed administrative scheme, such as the one in Michigan, exists in Texas. Since Texas, unlike Michigan, does not have a legislatively developed administrative scheme, this DWI roadblock violated King's rights under the fourth amendment of the United States Constitution. We sustain King's first point of error.

### Legality of Roadblock Under the Texas Constitution

Article I, section 9 of the Texas Constitution is in all material aspects the same as the fourth amendment of the United States Constitution and does not provide a more restrictive standard of protection than that provided by the fourth amendment. *Brown v. State*, 657 S.W.2d 797, 798–99 (Tex.Crim.App.1983). Because we find the roadblock in question unconstitutional under the fourth amendment of the United States Constitution, we also find it unconstitutional under article I, section 9 of the Texas Constitution. We sustain King's second point of error.

## CONCLUSION

Because of our disposition of King's first two points of error, we need not address his remaining points. We reverse the trial court's judgment and remand the case for a new trial.