COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

GERARDO LUJAN, § 

§ No. 08-06-00321-CR

Appellant, §

§ Appeal from the

v. §

§ 384th  Judicial District Court

§

THE STATE OF TEXAS, § of El Paso County, Texas

§

Appellee. § (TC# 20060D01468)

§

**O P I N I O N**

After a hearing and subsequent denial of a motion to suppress, Appellant pled guilty to the lesser included offense of possession of cocaine in an amount more than four grams but less than 200 grams, and was sentenced to 4 years of imprisonment per the terms of the plea agreement.  Appellant raises one issue on appeal challenging the denial of his motion to suppress on the basis of an illegal checkpoint.  We reverse and remand.

A motion to suppress hearing was held on July 10, 2006.  At the hearing, Sheriff Deputy Jose Hernandez testified he was working a stationary vehicle checkpoint in Tornillo, Texas targeting uninsured motorists and unlicensed drivers on February 9, 2006.  An entire unit of criminal interdiction officers was assigned to do the checkpoint that day.  The criminal interdiction unit handles traffic enforcement, DWI, and under-age drinking and includes a K-9 unit.  The procedure used at the checkpoint was to stop all vehicles traveling from both directions.

Appellant approached the checkpoint in his vehicle, and Deputy Hernandez stopped him and asked for his driver's license and proof of insurance. Appellant stated that he did not have a driver's license, but did show proof of insurance. Deputy Hernandez directed him to park on the side of the road, so he could issue a citation for driving without a license. Deputy Hernandez asked Appellant to step out of the car and move to where his patrol car was. He then approached the passenger in the vehicle, and asked for identification and where they were coming from. The passenger provided his name and date of birth, and stated they were with a friend named Victor buying roosters. The passenger identified himself as Javier Carrillo. Deputy Hernandez went to where Appellant was standing, and began to issue the citiation. He asked where they were coming from, and Appellant responded they were at a friend Javier's house. Neither Appellant nor Mr. Carrillo could provide Deputy Hernandez with the address or street name of the friend's house. Deputy Hernandez did a warrant check on both Appellant and Mr. Carrillo. While completing the citation, dispatch called Deputy Hernandez on the radio, and stated that the passenger in the vehicle, Mr. Carrillo, had two criminal warrants for assault and possession of a controlled substance. Deputy Hernandez approached the vehicle with Deputy Gonzalez, arrested Mr. Carrillo, and then placed him in his squad car. While Mr. Carrillo was being placed in the car, Deputy Gonzalez went to Appellant. Deputy Gonzalez informed Appellant he was going to pat him down for weapons for safety reasons. Deputy Gonzalez felt a bulge in one of Appellant's pockets, and inquired about what it was. Appellant stated that it was money, and that Deputy Gonzalez could take it out and look. Deputy Gonzalez found another pocket with a bulge, which was also money. Appellant had about $1,562 in cash in his pockets. Deputy Gonzalez asked why he had so much cash, and Appellant said he was going to buy a big screen

tv. Deputy Hernandez asked for Appellant's consent to search the vehicle, which he gave. The K-9 unit was called over, and as the dog was approaching, it alerted. The unit did its examination of the vehicle, and Deputy Almonte stated that there was something in the vehicle and to secure the driver, which Deputy Gonzalez did by placing him in handcuffs. Deputy Almonte pried the control switch cover on the door open, and underneath, bags of white, powdery substance were found. Deputy Hernandez believed the substance to be cocaine.

We review the trial court's ruling on a motion to suppress for abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 88-9 (Tex.Crim.App. 1997). We give almost total deference to the trial court's determination of historical facts supported by the record, especially when they are based on an credibility and demeanor. *Id*. at 89. We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). The trial court's ruling will be upheld if it is reasonably supported by the record, and is correct on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

The stopping of a vehicle constitutes a seizure for Fourth Amendment purposes. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58, 96 S.Ct. 3074, 3082-83, 49 L.Ed.2d 1116 (1976). The United States Supreme Court has suggested that a type of roadblock to verify drivers' licenses and vehicle registration would be permissible, but checkpoints to detect evidence of ordinary criminal wrongdoing are not. *City of Indianapolis v. Edmond*, 531 U.S. 32, 39, 121 S.Ct. 447, 452-53, 148 L.Ed.2d 333 (2000). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Texas v. Brown*, 460

U.S.730, 739, 103 S.Ct. 1535, 1541-42, 75 L.Ed.2d 502 (1983), *citing Deleware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The Court of Criminal Appeals held this two-prong test applies to both random stops and checkpoints. *Schenekl v. State*, 30 S.W.3d 412, 414 (Tex.Crim.App. 2000).

Appellant argues the checkpoint at issue was a subterfuge for DWI arrests and general criminal activity. He cites *King v. State*, 816 S.W.2d 447 (Tex.App.--Dallas 1991, pet. ref'd), *State v. Hubacek*, 840 S.W.2d 751 (Tex.App.--Fort Worth 1992, pet. ref'd), and *Meeks v. State*, 692 S.W.2d 504 (Tex.Crim.App. 1985) in support of his argument. In *King*, the checkpoint was held invalid as an unlawful DWI checkpoint, since it involved a unit whose primary duty is DWI enforcement, was set up in the middle of the night, in an area chosen for its high probability of DWI violations, and only stopping traffic leaving the area where bars and restaurants are located. *King*, 816 S.W.2d at 450-51. It was clear the intent of the roadblock was to catch drunk drivers. *Id*. at 451. In *Hubacek*, the appellate court remanded the case for the trial court to determine the intent of the officers before determining whether the roadblock was a subterfuge for catching drunk drivers when looking at all the circumstances including the time the check was performed, what traffic was being stopped, and whether the checkpoint was located near bars. In *Meeks*, there was a collaborative effort between state and federal officers, which included DPS officers, narcotics officers, Border Patrol, Alcoholic Beverage Commission officers, Parks and Wildlife officers, and License and Weight Division officers. *Meeks*, 692 S.W.2d at 506. Some of the officers came from as far as 200 to 300 miles away. *Id*. There was testimony that they were there to enforce all the laws and working together on anything that would be a violation of some type. *Id*. Officers testified that they were not there just to look at driver's licenses. *Meeks*, 692

-4-

S.W.2d at 507. The court held that while the officers have the right to stop and detain motorists for the limited purpose of checking their driver's licenses, it does not authorize fishing expeditions. *Meeks*, 692 S.W.2d at 508. The mere asking for a driver's license will not validate the stopping of an automobile if it is clear the driver's license check was not the reason for detention. *Id*. If the license check is not the sole reason for a detention, the detention is not authorized and cannot be upheld. *Id*.

Deputy Hernandez testified at the hearing on the motion to suppress they were asked to do a stationary vehicle check to target uninsured motorists and unlicensed drivers in Tornillo, Texas. The entire unit was assigned along with a supervisor and several other deputies. Deputy Hernandez stated the purpose was to check for unlicensed drivers and uninsured motorists. On cross-examination, he stated the purpose of their unit was to take care of racing, DWI, traffic enforcement, narcotics, and other particular tasks. He also stated that at the time of the checkpoint if they had come across an immigration violation they would have held the person for a reasonable amount of time to allow border patrol to arrive and determine the person's status. Deputy Hernandez said the K-9 unit was part of their unit, and was assisting in the task they were assigned to that day.

Deputy Gonzalez testified that he was involved in a stationary vehicle checkpoint. He stated that every vehicle was stopped, and as they came to the location they would ask them for a driver's license and insurance. Deputy Gonzalez went to help Deputy Hernandez when he heard about the warrants on the radio. On cross-examination, Deputy Gonzalez stated that they were checking for driver's license and insurance, but were also there for any other violations that they

would see such as expired registration and inspection stickers and license plate requirements. When asked if that is all they were there for, Deputy Gonzalez answered no. They were present for any other violations they would see. He stated that they would act on immigration problems as well.

We find the checkpoint was not solely for the purpose of checking driver's license and insurance. Here, a criminal interdiction unit that handled racing, DWI, traffic enforcement, narcotics, and other particular tasks with a K-9 unit was searching for any evidence of criminal wrongdoing, which is not permitted. *City of Indianapolis*, 531 U.S. at 39, 121 S.Ct. at 452-53. While Deputy Hernandez stated they were only their doing the assigned task of a driver's license and insurance checkpoint, Deputy Gonzalez stated that they were there for any violations they came across. The State certainly has a vital interest in verifying that its motorists are properly licensed and insured, however, a checkpoint that is going to be used to determine if there are any criminal violations ongoing is too deep of an intrusion upon an individual's Fourth Amendment rights. Since the evidence was obtained by use of an illegal checkpoint, the trial court abused its discretion in denying the motion to suppress. We sustain Issue One.

Because the trial court abused its discretion by denying the Appellant's motion to suppress, we sustain Appellant's sole point, reverse the trial court's judgment, and remand this cause to the trial court for further proceedings.

December 9, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)

(Do Not Publish)

-6-