The STATE of Texas, Appellant,

v.

Charles L. WAGNER, Appellee.

No. 05–89–00675–CR.

Court of Appeals of Texas, Dallas.

May 29, 1990.

Pamela Sullivan Berdanier, Dallas, for appellant.

Robert M. Clark Jr., John Alan Goren, Lawrence G. Boyd, Dallas, for appellee.

Before McCLUNG, KINKEADE and OVARD, JJ.

## OPINION

McCLUNG, Justice.

This is a "roadblock" case. The State brings this appeal contending that the trial court erred by granting a motion to suppress the evidence obtained in a roadblock where the defendant was arrested and later charged with driving while intoxicated (DWI). We affirm the judgment of the trial court.

On January 7, 1989, between the hours of 1:00 a.m. and 4:00 a.m., the Dallas Police Department (DPD) set up a roadblock in the 5900 block of Skillman Street in the city of Dallas. At this point, Skillman Street is a bridge or overpass over East Northwest Highway and makes up a part of the interchange of these two major thoroughfares. The roadway has three lanes in each direction. There are no exits in the elevated portion, therefore, a vehicle entering this traffic interchange is compelled to continue through the interchange to the next intersection. This precise location was chosen to meet the DPD Guidelines as a place with a minimum of crossings to discourage motorists from turning to avoid the checkpoint. Barricades and flares funneled traffic into one lane each way. Two "pursuit" vehicles were provided with designated drivers, to be used as necessary.

Several assigned officers stopped all vehicles and asked each driver two questions: 1) "Have you been drinking an alcoholic beverage?" and 2) "Are you taking medication or using drugs?" If the officer so chose, he would perform an initial horizontal gaze nystagmus (HGN) test on the driver. The officers were not to take more than fifteen seconds per driver. Depending on the interrogating officer's discretion, the driver was allowed to proceed or immediately arrested and removed from his vehicle for further processing.

The State goes to great length to make it clear that the sole and exclusive purpose of this "roadblock" or "checkpoint" was to check the sobriety of the drivers of all the vehicles passing through, and for no other reason. The State points out that prior to the scheduled date for this activity, the supervising sergeant submitted a detailed operational plan to his commander who personally selected, inspected and approved the site. The date and location was given to the DPD Information Office for release to any interested media.

The State's only argument is that the sobriety checkpoint in this case does not violate the fourth amendment to the United

States Constitution or article one, section nine of the Texas Constitution. The State attempts to draw a distinction between this case and the line of cases where the facts suggest a subterfuge in the reason for the stop and that the true purpose of a stop was actually for sobriety checks, not for driver's license or insurance checks. *See Webb v. State*, 739 S.W.2d 802 (Tex.Crim. App.1987). The State maintains that because of the use of guidelines, advance publicity, warning signs, etc., that the objectional features pointed out in *Webb* are not present; therefore, those cases are not applicable. The State takes comfort in the fact that the decision in *Higbie v. State*, 780 S.W.2d 228 (Tex.Crim.App.1989) (en banc) was a plurality/majority and the five concurring opinions agreed that the subterfuge type roadblock was unconstitutional. Thus, the State reasons, *Webb* should control. Put another way, we understand the State, relying on dictum and perhaps on a concurring opinion in *Higbie*, to say that if the State does not engage in any form of subterfuge as to the purpose in conducting a DWI roadblock, no Fourth Amendment violation takes place. This is a flawed analysis.

A fair reading of *Webb* and *Higbie* reveals the reasoning was based on the fourth amendment. The threshold question in all such cases is whether or not the fourth amendment applies. Having determined that it did, the court, in both *Webb* and *Higbie*, then turned to the facts. In each of those cases, the facts showed a feeble effort by the DPD to disguise their conduct in the hope that the true purpose or goal would go undetected. After diplomatically declaring the stratagem to be merely a little "subterfuge", the court then took the facts of each case individually under scrutiny in the light of the fourth amendment. Both sets of facts were held to be "seizures" that ran afoul of the fourth amendment. The unfortunate "subterfuge" had nothing to do with the final holding in either case.[1]

■ The State now says, in this case, that since there was no attempt to resort to an artifice, and the DPD was honest in their intentions with the public, that they have overcome the difficulties encountered in *Webb* and *Higbie*. This presumes the fourth amendment does not exist. Following the clear, bright line of authority laid down by the Court of Criminal Appeals in *Webb* and *Higbie*, we first must determine whether the fourth amendment of the United States Constitution and/or article one, section nine of the Texas Constitution applies to a sobriety or DWI roadblock. Here, the State aggressively established the primary purpose and goal of this particular roadblock was to check for sobriety of the vehicle drivers arriving at the checkpoint. The mental gymnastics to determine the purpose are unnecessary. The Court of Criminal Appeals, in both *Webb* and *Higbie*, made a very careful analysis of this question and in both these well reasoned opinions the answer was unquestionably, *YES!*

■ Having determined this threshold question, we turn now to the specific facts of this case. Without being repetitive, this roadblock was established on a highly travelled thoroughfare, with a high concentration of bars and nightclubs less than a mile in either direction, and only a few hundred yards between several clubs and a very large apartment complex that caters to a younger set. The barricades were set up shortly before the bars closed on a Saturday, where the slope of the roadway impedes visibility, with no intersecting streets and pursuit vehicles on ready-standby. All vehicles were stopped and the drivers were asked patently incriminating questions. Admittedly, this roadblock had two purposes: detection of drunk drivers and collection of evidence.

The fourth amendment requires the assessment of, at a minimum, reasonable suspicion to stop and detain individuals for investigatory purposes. This fundamental requirement is totally lacking in this case. We are mindful that under federal law

1. The insistence on the use of a subterfuge as reason for these stops would suggest that there

was a degree of uncertainty about their validity from the outset.

there is a limited area of exceptions that permits suspicionless searches and seizures for enforcement of administrative or regulatory statutes without a visible manifestation of individual violation. Being somewhat inconsistent in its argument of the applicability of the fourth amendment, the State further argues that we should apply the balancing test between society's interest in eradicating drunken driving and intrusion on the reasonable expectation of privacy guaranteed under the constitution. In short, the State asks us to hold that stops of this type are within that limited area of "suspicionless" stops. This we decline to do. "DWI roadblocks are not part of such an excepted area." *Higbie,* 780 S.W.2d at 240.

The State also urges that we hold DWI roadblocks to be within the administrative scheme that permits driver's license and insurance checkpoints. Again, we decline. A DWI roadblock differs from the usual administrative or regulatory inspection because there is no 'regulatory' agency to enforce the drunk driving prohibition other than the police and the criminal courts. The clear purpose of these laws is not to regulate, but to detect and punish criminal drunk driving. Nothing distinguishes this crime from any other serious one. If we allowed detention without individualized suspicion to deter crime, we would allow preventative detention in high crime areas. What distinguishes the permissible administrative inspection from other searches is not that they are only intended to deter, but that they carry out an administrative scheme that is not part of the penal system. A request to look at one's license is far less accusatory than an inspection for red, watery eyes, slurred speech, alcohol on the breath, and any other signs of intoxication, accompanied by incriminating questions. Because a roadblock may be permissible to check for a driver's license does not mean it is permissible to check for drunk driving.

The clear fact of this case is that the apparatus of the law enforcement system is moved to the scene of a roadblock—with field sobriety test devices ready to take evidence for introduction at a criminal trial, police officers ready to arrest offenders, police cars ready to pursue any attempted evasion, cars ready to take suspects away to jail, and police officers to drive their cars away. Texas has no such administrative scheme. This is a task best left to the legislature.

 Taking all facts in context, we conclude this roadblock was not based on reasonable suspicion but was designed to be preemptive in nature and premised on nothing more than inarticulable facts—hunches that criminal conduct would occur. As such, it was an infringement of individual freedom of privacy and travel. We overrule the State's sole point of error. Accordingly, we affirm the trial court's judgment.