The STATE of Texas, Appellant,

v.

Charles Lee WAGNER, Appellee.

No. 05–89–00675–CR.

Court of Appeals of Texas,
Dallas.

Nov. 14, 1991.

Discretionary Review Refused
Feb. 26, 1992.

Lawrence G. Boyd, Robert M. Clark, John Alan Goren, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before ROWE, WHITTINGTON and CHAPMAN [1], JJ.

### OPINION ON REMAND

CHAPMAN, Justice.

The State of Texas appeals the ruling of the trial court granting a motion to suppress. On original submission, the State presented one point of error contending that: (1) sobriety checkpoints are constitutional; (2) the trial court erred in holding that the DWI checkpoint violated the fourth amendment to the United States Constitution and Article 1, section 9 of the Texas Constitution; and (3) the trial court erred in granting the motion to suppress. This Court overruled the point and remanded the case for trial. The Court of Criminal Appeals remanded this sobriety checkpoint case for us to reconsider our holding in light of *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). *State v. Wagner*, 810 S.W.2d 207, 209 (Tex.Crim.App.1991). In our original opinion we affirmed the trial court's exclusion of evidence obtained at a sobriety checkpoint stop. *State v. Wagner*, 791 S.W.2d 573, 574 (Tex.App.—Dallas 1990). We upheld the court's action and held that obtaining evidence in this manner violates the Fourth Amendment to the United States Constitution. In reaching that conclusion we relied upon *Higbie v. State*, 780 S.W.2d 228 (Tex.Crim.App. 1989). *Wagner*, 791 S.W.2d at 576. The Court of Criminal Appeals has since determined that *Higbie* was overruled by *Sitz*. *King v. State*, 800 S.W.2d 528, 529 (Tex. Crim.App.1990). To the extent to which we relied on *Higbie* our opinion was reversed. *State v. Wagner*, 810 S.W.2d 207, 207–08

(Tex.Crim.App.1991). In our original opinion we considered the State's argument that roadblocks are permissible within the administrative scheme which allows driver's license and insurance checkpoints. What distinguishes sobriety checkpoint roadblocks from regulatory inspections is that there is no 'regulatory' agency to enforce the drunk driving prohibition other than the police and the criminal courts. *Wagner*, 791 S.W.2d at 576. Texas has no administrative scheme providing authority for the police to engage in the collection of evidence at sobriety checkpoints. In his concurring opinion, Justice Miller, along with five other justices, distills the issue for us to resolve as whether Texas has an administrative scheme permitting DWI roadblocks consistent with the safeguards embodied in *Sitz*. *Wagner*, 810 S.W.2d 207, 208 (Tex.Crim.App.1991). On remand, we conclude that, because Texas has no such administrative scheme, this roadblock violated Wagner's rights under the Fourth Amendment to the United States Constitution. We affirm the ruling of the trial court and remand the cause for trial.

### FACTS

Wagner was arrested and charged with DWI after evidence was acquired at a roadblock. The trial court excluded this evidence finding that it was unlawfully obtained.

The State argues the roadblock did not violate either the federal or state constitutions because it was not a subterfuge to detect drunk drivers while checking for driver's licenses and registrations. Wagner's brief supports the trial court's action under several different theories. He argues that this type of roadblock is unauthorized by Texas statute and that Texas has never established an administrative scheme that could be furthered by these roadblocks.

### Evidence of the Administrative Scheme Creating Roadblocks

The State's offer of proof that the sobriety stops were permissible consisted of six

**1.** The Honorable Ron Chapman succeeded the Honorable Pat McClung, a member of the original panel, upon Justice McClung's resignation.

Justice Chapman has reviewed the briefs and the record before the Court.

exhibits. These exhibits are all internal police memoranda or affadvits from the participating officers. We have distilled the salient aspects of those exhibits. The Dallas Police Department (DPD) developed its own guidelines to conduct roadblock sobriety checks. The guidelines originated with acting Police Chief Louie C. Caudell. Caudell directed that the sobriety checkpoints would be established to make the DWI arrests highly visible to the public and to make the police department more efficient in effecting these arrests. Advanced notice of the sites was to be made available to all news media representatives in the police press room.

Investigation and enforcement commanders had the right to select a site on their own. The primary directive for site selections was to alleviate the instances of persons driving while intoxicated at that location. Due consideration was to be given to the safety of the motorist and to minimize the inconvenience to the individual motorist. The guidelines limited selection sights to areas where motorists would be discouraged from turning to avoid the checkpoint.

Pursuit vehicles were positioned to pursue motorists who attempted to avoid the checkpoint. Drivers who failed to stop were to be asked for the motorist's driver's license and for a proof of liability insurance. The officer was to discuss the traffic violation and during the conversation determine if the motorist was intoxicated.

Officers were directed not to take more than fifteen seconds per driver stopped at the checkpoint to determine whether the driver was intoxicated. Officers were to ask each driver two questions: 1) "Have you been drinking an alcoholic beverage?" and 2) "Are you taking medication or using drugs?" The guidelines only authorized the interviewing officer to question the drivers. However, the officer who arrested Wagner conducted a horizontal gaze nystagmus test on Wagner while he was in his car. Depending on the interrogating officer's discretion, the driver was allowed to proceed or was detained for field sobriety testing. An officer was stationed at the curb to conduct field sobriety tests.

## STANDARD OF REVIEW

A fourth amendment "seizure" occurs when a vehicle is stopped at a checkpoint. *Sitz*, 110 S.Ct. at 2485. In *Sitz*, the Supreme Court determined that in some cases, the seizures are reasonable under the fourth amendment. *Sitz*, 110 S.Ct. at 2488. The Court only considered a challenge to the use of sobriety checkpoints generally. In determining that a Michigan checkpoint stop was reasonable, the Court placed heavy reliance on the guidelines that were promulgated by an advisory committee. This committee was created as a result of recommendations of a task force established by state legislation. The Court began with the basic premise that "politically accountable officials" decided that sobriety checkpoints were a useful alternative law enforcement technique. *Sitz*, 110 S.Ct. at 2487.

Before applying the three-prong balancing test of *Brown v. Texas* [2], enunciated in *Sitz* as applicable to the stops, we must first find that the stops are the product of a legislatively developed administrative scheme [3]. *See Sitz*, 110 S.Ct. at 2487. We now examine the evidence regarding whether DPD was empowered by legislation to create sobriety checkpoint guidelines.

## ANALYSIS

In this case, the State introduced no evidence that Texas has such an administratively developed scheme as Michigan had in *Sitz*. The evidence that the State introduced showed that the acting chief of police promulgated a general policy regarding checkpoint sobriety stops. Without identifying the source, the State introduced several guidelines delineating precisely how the checkpoint was to be carried out. The rest of the evidence concerned whether

**2.** *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979).

**3.** *But see State v. Sanchez,* 800 S.W.2d 292 (Tex. App.—Corpus Christi 1990, pet. granted) (held Supreme Court did not require State-established guidelines concerning insurance checkpoints).

the sobriety checkpoint which resulted in Wagner's arrest was conducted according to the department's guidelines. From this evidence, we cannot conclude that a legislatively developed administrative scheme, such as the one in Michigan, exists in Texas. We hold that this DWI roadblock violated Wagner's rights under the Fourth Amendment. We overrule the State's first point of error.

The State also argues that the checkpoint does not violate article I, section 9 of the Texas Constitution. When analyzing and interpreting article I, section 9 of the Texas Constitution, the courts of Texas are not bound by Supreme Court decisions addressing comparable Fourth Amendment issues. *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991). While recognizing that the Fourth Amendment analysis is no longer always harmonious with an article I, section 9 analysis, we hold that our article I, section 9 provides at least as much protection as the Fourth Amendment of the United States Constitution. Therefore, since we have concluded that the roadblock violated Wagner's Fourth Amendment rights, we also hold that the roadblock violates Wagner's rights under article I, section 9 of the Texas Constitution.

The trial court's suppression order is affirmed. This cause is remanded for trial.