Oscar GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–042–CR.

Court of Appeals of Texas,
Corpus Christi.

April 8, 1993.

Jaime E. Carrillo, Kingsville, for appellant.

Peter De La Garza, County Atty., Kleberg County Courthouse, Kingsville, for appellee.

Before FEDERICO G. HINOJOSA, Jr., SEERDEN and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellant pleaded guilty to driving while intoxicated, TEX.REV.CIV.STAT.ANN. art. 67011–1 (Vernon 1993), and the trial court assessed punishment at ninety days' confinement, probated for two years, and a $300 fine. By two points of error, appellant complains that the trial court erred by denying his motion to suppress evidence which he contends the State obtained after conducting an unconstitutional roadblock.[1]

1. The State did not file a brief in this case.

We reverse the judgment of the trial court and remand the case to the trial court for further proceedings.

The Kleberg County Sheriff authorized his department's "mid-shift" to conduct a driver's license check on U.S. Highway 77 between midnight and 8:00 a.m. on July 13, 1991 and July 14, 1991. Sergeant Dunn, a Kleberg County Deputy Sheriff, supervised the checkpoint, which was operated between 1:00 a.m. and approximately 3:30 a.m. on July 13, 1991, stopping every vehicle traveling through the "Y" intersection south of Kingsville, where U.S. Highway 77 meets Business 77. Five Kleberg County Sheriff's Department deputies participated in the roadblock, including Sergeant Dunn, Deputy Vela, and Sergeant Zavala, all of whom testified at appellant's suppression hearing. The officers placed warning signs with flashing lights from one-half mile to one mile before the checkpoint and used traffic cones to funnel traffic into one lane. At the checkpoint, the officers stopped every vehicle for license and insurance inspection.

When appellant's vehicle approached the checkpoint, Deputy Vela requested that appellant stop, but he continued driving for an additional twenty feet. Vela approached the vehicle and asked appellant "why hadn't he stopped." Vela smelled the odor of alcohol on appellant's breath when appellant responded that he was confused. Vela requested that appellant move his vehicle to the side of the road, where Sergeant Zavala, an intoxilyzer operator, administered sobriety tests to appellant. Vela subsequently arrested appellant for driving while intoxicated. Appellant was charged by information with driving on a public road while not having the normal use of mental and physical faculties by reason of introduction of alcohol and for driving on a public road while having an alcohol concentration of at least .10%. In a motion to suppress evidence, appellant challenged his arrest and search as violative of the federal constitution, the Texas Constitution, and the Code of Criminal Procedure.

By his first point of error, appellant complains that the roadblock violated the Fourth Amendment to the federal constitution. He argues that the officers established a sobriety checkpoint which did not meet the standards of *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

 The State bears the burden of proving the legality of a warrantless seizure. *Higbie v. State,* 723 S.W.2d 802, 805 (Tex.App.—Dallas 1987), *aff'd,* 780 S.W.2d 228 (Tex.Crim.App.1989). Statutes which allow law enforcement personnel to detain motor vehicles for the purpose of determining whether the driver has the required license do not allow "fishing expeditions." *Meeks v. State,* 692 S.W.2d 504, 508 (Tex. Crim.App.1985). Such general investigatory stops are not permitted by the federal constitution or the Texas Constitution. *Webb v. State,* 739 S.W.2d 802, 812 (Tex. Crim.App.1987); *King v. State,* 816 S.W.2d 447, 450 (Tex.App.—Dallas 1991, pet. ref'd). Appellant argues that the roadblock was for general investigatory purposes and is thus prohibited under Texas law.

 The State produced the Sheriff's memorandum to Sergeant Dunn in support of its contention that the checkpoint was established for the legitimate purpose of examining drivers' licenses. The evidence shows that the checkpoint was set up at 1:00 a.m., that Sergeant Dunn was present at the checkpoint with a narcotics detecting dog, and that Sergeant Zavala's duty that night was "primarily" to conduct field sobriety tests. Officer Vela testified that they were instructed "to do a wide range" of things, including looking for contraband in vehicles, and for nervousness or signs of intoxication in drivers. Under these facts, we find the driver's license checkpoint to be a subterfuge for more general investigation. We thus reach appellant's contention that the roadblock is constitutionally infirm.

 A Fourth Amendment seizure occurs when a government agent terminates freedom of movement through means intentionally applied. *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 449, 110

S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). Temporary checkpoint stops are "seizures" under the Fourth Amendment. *Id.; United States v. Martinez–Fuerte,* 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976). The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989); *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). Whether a search is reasonable "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985). The Fourth Amendment imposes limits on search and seizure powers in order to prevent law enforcement officials from arbitrary and oppressive interference with an individual's privacy and personal security. *Martinez–Fuerte,* 428 U.S. at 555, 96 S.Ct. at 3081. Thus, the permissibility of a particular law enforcement practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

In *Sitz,* the Supreme Court applied the test developed in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), which required a court to balance a legitimate State interest (preventing DWI related accidents), the degree to which the program advances the State interest, and the extent to which the program intrudes on an individual's protected privacy interests. *Sitz,* 496 U.S. at 449–55, 110 S.Ct. at 2485–88. The Supreme Court held that Michigan's program of DWI checkpoints was valid under the Fourth Amendment, indicating that a court, when determining the degree to which the seizure advances the public interest, was not to usurp "from politically accountable officials" the decision of which "reasonable law enforcement techniques should be employed to deal with

a serious public danger." *Id.* at 453, 110 S.Ct. at 2487. The Court continued:

> Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferable as an ideal. But for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.

*Id.*

This Court previously held that a checkpoint established by four Department of Public Safety officers and "authorized in accordance with Department of Public Safety guidelines" met the requirements of *Sitz.* *State v. Sanchez,* 800 S.W.2d 292, 297 (Tex.App.—Corpus Christi 1990, pet. granted). We stated:

> The U.S. Supreme Court does not require the State to present any evidence concerning the effectiveness of a temporary checkpoint. Furthermore, the U.S. Supreme Court never said that the State had to establish guidelines concerning the checkpoint's time, frequency or location.
>
> There is virtually no difference between the levels of intrusion on law-abiding motorists from the brief stops occurring in the U.S. Supreme Court cases of *Martinez–Fuerte* and *Sitz* and the stop involved in this case. The intrusion resulting from the brief stop is for constitutional purposes indistinguishable from the checkpoint stops upheld in *Martinez–Fuerte* and *Sitz.*

*Id.* 800 S.W.2d at 297–98.[2] Justice Dorsey dissented, arguing that *Sitz* requires "politically accountable officials" to balance the State's interest in reducing the incidence of drunken driving, the effectiveness of the checkpoints in promoting that interest, and the degree to which the checkpoints intruded upon the individual motorist. *Id.* 800 S.W.2d at 300 (Dorsey, J., dissenting).

More recently, the Dallas Court of Appeals held that a DWI roadblock operated under a general policy and guidelines developed by Dallas's acting chief of police violated the Fourth Amendment because the policy and guidelines were not "legislatively developed." *State v. Wagner,* 821 S.W.2d 288, 290–91 (Tex.App.—Dallas 1991, pet. ref'd). The Dallas Court of Appeals had previously held the same roadblock unconstitutional under *Higbie,* 780 S.W.2d 228 (Tex.Crim.App.1989). *State v. Wagner,* 791 S.W.2d 573, 574 (Tex.App.—Dallas 1990), *reversed,* 810 S.W.2d 207 (Tex.Crim. App.1991). On State's petition for discretionary review, the Court of Criminal Appeals indicated that *Sitz* overruled *Higbie,* and remanded the case to the Dallas Court of Appeals for reconsideration of the case in light of *Sitz.* *State v. Wagner,* 810 S.W.2d 207, 208–09 (Tex.Crim.App.1991). Six judges of the Court of Criminal Appeals took note that Michigan's legislature empowered the administrative scheme, and the judges determined that the task of creating an administrative scheme for DWI roadblocks should be left to the legislature, stating:

> Thus, the issue presented in this case may be resolved under *Michigan v. Sitz* without the necessity of addressing the question of whether the DWI roadblock violated Art. I, § 9.

*Id.* 810 S.W.2d at 208 (Miller, J., concurring). On remand, the Dallas Court of Appeals followed the suggestion of the Court of Criminal Appeals, found no evidence of a legislatively created administrative scheme, and held the roadblock unconstitutional under the Fourth Amendment, reserving the question under the Texas Constitution. *State v. Wagner,* 821 S.W.2d 288, 290–91 (1991); *see also King v. State,* 816 S.W.2d 447, 451 (Tex.App.—Dallas 1991, pet. ref'd).

■ In the instant case, the State produced evidence that the Kleberg County Sheriff's Department has a written policy concerning checkpoints. The policy was not introduced into evidence, the State did

---

**2.** Nevertheless, Texas law requires the State to prove the legality of warrantless searches and seizures. *Lalande v. State,* 676 S.W.2d 115, 116 (Tex.Crim.App.1984); *McVickers v. State,* 838 S.W.2d 651, 653–54 (Tex.App.—Corpus Christi 1992, pet. granted).

not produce evidence of the policy's source, and the only testimony concerning its contents came from Sergeant Dunn, who stated that the policy requires the officers to stop every car or a fixed ratio of cars. The State failed to show that the roadblock was established pursuant to an administrative scheme that was legislatively authorized. We, therefore, hold that the seizure of appellant violates the Fourth Amendment. *Wagner*, 821 S.W.2d at 291; *King*, 816 S.W.2d at 451. We sustain appellant's first point of error.

Having sustained appellant's first point of error, we do not reach the issue of whether the checkpoint violated appellant's rights under the Texas Constitution.

We REVERSE the judgment of the trial court and REMAND the case to the trial court for further proceedings.